<u>**FILED UNDER SEAL**</u>

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| HEADWATER RESEARCH LLC, <br><br> *Plaintiff*, <br><br> v. <br><br> AT&T SERVICES, INC., AT&T MOBILITY, LLC, and AT&T CORP., <br><br> *Defendants*. | Civil Action No. 2:23-cv-00397-JRG-RSP <br><br> (Lead Case) <br><br> **JURY DEMANDED** |
| HEADWATER RESEARCH LLC, <br><br> *Plaintiff*, <br><br> v. <br><br> AT&T SERVICES, INC., AT&T MOBILITY, LLC, and AT&T CORP., <br><br> *Defendants*. | Civil Action No. 2:23-cv-00398-JRG-RSP <br><br> (Member Case) <br><br> **JURY DEMANDED** |

**PLAINTIFF HEADWATER RESEARCH LLC'S MOTION
TO DISQUALIFY MCKOOL SMITH AS COUNSEL FOR DEFENDANTS**

I.      **INTRODUCTION**

McKool Smith's representation of Defendants AT&T Services, Inc., AT&T Mobility, LLC and AT&T Corp. (collectively, "AT&T") constitutes a clear and unmitigable conflict of interest that requires disqualification. In 2019, plaintiff Headwater Research LLC ("Headwater") and third-party ▮▮▮▮▮▮▮▮ Inc. ("▮▮▮▮▮▮▮▮▮ began discussions regarding ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. To facilitate those discussions, Headwater entered into a non-disclosure agreement that expressly stated ▮▮▮▮▮▮▮ and Headwater have a common legal interest, and Headwater shared privileged and highly confidential materials in furtherance of that interest. McKool Smith represented ▮▮▮▮▮▮▮ through the entirety of the parties' discussions, and thus had access to all of Headwater's confidential common interest materials, including documents relating to the subject matter of this litigation, such as ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ McKool Smith also had several telephonic and in-person meetings with Headwater's in-house counsel and Dr. Raleigh— the primary inventor of the asserted patents and Headwater's founder—regarding the same.

McKool Smith thus owed Headwater a duty of confidentiality not only under the terms of the ▮▮▮▮▮▮▮ NDA, but also under state and national ethical standards. McKool Smith violated that duty in undertaking its current representation of AT&T in this substantially related matter. Indeed, at least one of the attorneys that was directly involved in the ▮▮▮▮▮▮▮/Headwater discussions and had access to Headwater's privileged and confidential information—Kevin Hess—is counsel of record for AT&T in this case. It is simply impossible to have a fair trial in this case (and possibly in other related cases where defendants may be working together) if McKool Smith is allowed to continue its representation of AT&T.

1

II.     FACTUAL BACKGROUND

    A.     **Starting in 2019, Headwater Provided Privileged and Highly Confidential Information to Attorneys at McKool Smith Regarding Headwater's Litigation Strategy,** ████████████████████████████████████

Plaintiff Headwater Research LLC is the owner of the two asserted patents in this case, U.S. Patent Nos. 8,589,541 ("'541 patent") and 9,215,613 ("'613 patent"), which generally relate to wireless communications technology. Raleigh Decl. ¶¶ 4–8. In 2008, Dr. Gregory Raleigh—the primary inventor of the asserted patents—formed Headwater to develop mobile operating systems and cloud technology, which underpin the mobile phone and app industries. *Id*. Headwater owns numerous patents in this and related fields. *Id*.

In 2013, Headwater had some limited discussions with attorneys at McKool Smith about potentially representing Headwater. *Id*. ¶ 9. In August 2017, Headwater's general counsel James Harris again reached out to a principal at McKool Smith, Pierre Hubert, to potentially do business together in regards to licensing Headwater's patent portfolio. The parties had a call on August 10, 2017, and following that call Mr. Harris sent McKool confidential materials regarding Headwater's ████████████████████████. Those materials included information regarding Headwater's potential ████████████ and its plan for ████████████████████████████ ████████████████████████. *See* Ex. 1. Mr. Hubert later informed Mr. Harris that they would be unable to assist Headwater due to conflicts with some of the entities that Headwater considered as potential licensees, but left open the possibility or working with Headwater in the future on a subset of parties and patents. Headwater provided a list of exemplary patents for discussion, and Mr. Hubert continued to review Headwater's patents and discuss them internally. *See* Ex. 2. Those discussions ultimately concluded in October 2017. Raleigh Decl. ¶ 10.

In 2019, Headwater entered into discussions with ████████ regarding a potential ██ ████████████████████████████████████████████████

███████████████████████. *Id.* ¶ 11. To facilitate those discussions, Headwater and

██████ entered into a non-disclosure agreement, effective November 6, 2019 ("███████

NDA"). *Id.* ¶¶ 12–13 & Ex. 3. The first paragraph provides the purpose of the NDA: ████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████ Ex. 3 ¶ 1. The NDA further provides that the party disclosing

confidential information (███████) █████████████████████████

███████████████████ and that ████████████████████████

█████████████████████████████████████████████ *Id.* ¶¶

3–5. In addition, the NDA contains a common interest provision, which states, in part:

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

*Id.* ¶ 7.

    Importantly, ████████ was represented by McKool Smith during these discussions.

McKool Smith was thus privy to all of the privileged and confidential Common Interest Materials

shared by Headwater. Raleigh Decl. ¶¶ 14–22.

    In and around February through April 2020, attorneys from McKool Smith, on behalf of

████████ Headwater's general counsel, and Dr. Raleigh had several in-person and telephonic

meetings to discuss ████████████████

---

[1] ████████████████████ is defined as information shared by Headwater that ████

██████████████████████████████████████████████

████████████████ *Id.* ¶ 7.

3

█████████████████████████████████. Raleigh Decl. ¶¶ 23–27 & Exs. 4–6. The parties also

discussed ████████████████████████████████████. *Id.* As set forth in the complaint,

Dr. Raleigh formed ItsOn to license and implement Headwater's technology into software and

services that expanded cellular service plan offerings and improved device and data management

capabilities. Dkt. 1 ¶ 14.

As part of these discussions, Headwater sent highly privileged and confidential information

directly to ████████ counsel at McKool Smith. For example, on February 25, 2020, Mr. Harris

sent Richard Kamprath of McKool Smith a ██████████████████████████████

████████████████████████████████████████████████ *See* Ex. 7. On

February 25 and 26, Headwater's general counsel met with Mr. Kamprath and others at McKool

Smith's Dallas, Texas office to discuss details related to Headwater's strategy regarding ████

█████████████████████████████ Raleigh Decl. ¶ 26. And on the evening of February

25, 2020, Mr. Kamprath and other attorneys at McKool Smith had a dinner meeting with

Headwater's general counsel continue their discussions. *Id.* ¶ 27 & Ex. 8. Notably, Kevin Hess

who is counsel of record for AT&T in this case, attended this meeting. *See id.*

To further facilitate the parties' continuing discussions and ████████ due diligence

process, Headwater created a private online data room in ██████ that allowed ████████ and its

counsel at McKool Smith to access Headwater's privileged and confidential information. *Id.* ¶ 28.

This data room contained more than ██████ of data comprising approximately ██████ files,

including files specifically related to Headwater's licensing and litigation strategies, ██████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████ with respect to ████████████████ specifically

4

AT&T.[2] Raleigh Decl. ¶¶ 29–30 & Ex. 9. ██████'s access logs confirm that multiple McKool Smith attorneys and personnel accessed and downloaded documents from Headwater's data room—including the ████████████████████████████████████████████

████████████████████████████████—*hundreds* of times from February to April 2020. *Id.* ¶¶ 31–46 & Exs. 10, 19.

On March 2 and 3, 2020, Mr. Kamprath of McKool Smith sent emails to Headwater general counsel Mr. Harris requesting certain documents relating to a potential litigation issue the parties had been discussing, including a third-party NDA and a memorandum prepared by outside counsel for Headwater regarding, ████████████████████████████████ Ex. 11. Mr. Kamprath also requested documents relating to certain ██████████████, the ██████ ████████████████████████████████████████ and certain communications between Headwater and ████████████████████████████. *Id.* Notably, the subject of the parties' email chain expressly stated that the discussions and materials relating to these issues were "confidential and subject to mutual interest protection." *Id.*

On March 16, 2020, Mr. Kamprath emailed Mr. Harris confirming that he had "review[ed] the documentation you have provided," and requested a meeting with Dr. Raleigh to "ask further questions about ████████████████████████████ Ex. 12. The parties confirmed the meeting for March 20, 2020, and Mr. Kamprath sent Headwater a list of documents for Dr. Raleigh to review and discuss at the meeting. *Id.* Mr. Kamprath also requested additional documentation regarding certain Headwater ████████████████████, as well as documents

---

[2] Headwater is willing to provide this document, as well as any other document in the data room, to the Court for *in camera* review.

describing the relationship between ████████████████████████. Ex. 13. All of the

requested documents were provided to McKool via Headwater's ██████ data room.

Over the next few weeks, the attorneys at McKool Smith continued their review and

analysis of Headwater's patents and confidential materials, and continued to ask Headwater

targeted questions regarding potential litigation issues. For example, on April 2, 2020, Mr.

Krampath, Mr. Harris, and Dr. Raleigh had a telephone conference to discuss ████████████

██████████████████████████████████████. Raleigh Decl. ¶¶ 47–48

& Exs. 15-16.

The discussions between Headwater and ██████████ ultimately came to an end and did not

result in a purchase and sale agreement. Accordingly, Headwater's counsel sent a letter requesting

that ██████████ and its attorneys destroy Headwater's privileged and confidential information. Ex.

17. On April 21, 2020, Ted Stevenson of McKool Smith "confirm[ed] that McKool Smith has

destroyed all documents and tangible objects containing or representing Headwater confidential

information, other than an archival copy kept in accordance with the law firm's bona fide record

retention policy, as provided for in the non-disclosure agreement." Ex. 18. Mr. Stevenson further

confirmed McKool's agreement "to continue to treat these retained documents as confidential

information," and stated that the "individuals who have accessed Headwater's confidential

information are aware of the terms of the non-disclosure agreement signed by ██████████ and

will continue to refrain from disclosure or use of Headwater information." *Id.*

**B.**   **Headwater Files Patent Infringement Complaints Against AT&T, and McKool Smith Enters Appearances on Behalf of AT&T Despite Clear Conflict of Interest**

On September 1, 2023, Headwater filed the complaint in this case asserting the '541 and

'613 patents against AT&T. Dkt. 1. AT&T answered on November 13, 2023. Dkt. 28. Notably,

the signature block includes Kevin Hess of McKool Smith, who was involved in the

Headwater/███████ discussions detailed above. *Id.* Mr. Hess entered a notice of appearance on behalf of AT&T on November 20, 2023. Dkt. 31.[3]

On November 21, 2023, counsel for Headwater emailed AT&T's counsel at McKool Smith advising of the conflict of interest arising from their prior representation of ███████ and their receipt of Headwater's privileged and confidential information. On November 31, 2023, counsel for Headwater met and conferred with the McKool Smith attorneys regarding the conflict. Ledahl Decl. ¶ 16. During that conversation, McKool Smith conceded that the firm had not implemented any kind of ethical wall to screen the attorneys who were involved in the Headwater/███████ matter and had access to Headwater's privileged and confidential information. *Id.* ¶ 17. Headwater requested that McKool Smith withdraw from their representation of AT&T, but they refused. Headwater thus informed them that it would be filing a motion to disqualify. McKool Smith subsequently offered to wall off the attorneys involved in the Headwater/███████ matter in exchange for Headwater's agreement not to seek disqualification. *Id.* ¶ 19. But even assuming this were sufficient to avoid disqualification for such an egregious conflict of interest, by that time the damage had already been done, including because McKool Smith attorneys such as Mr. Hess who had access to Headwater's privileged and confidential materials were already part of the McKool team adverse to Headwater in this matter. Headwater accordingly declined McKool Smith's offer.

## III.    LEGAL STANDARD

### A.    Federal Law and National Ethical Standards Regarding Conflicts of Interest Govern the Instant Motion to Disqualify

The Fifth Circuit has made clear that the ethical standards regarding conflicts of interest must be "rigorously appl[ied]," and district courts are "*obliged* to take measures against unethical

---

[3] Headwater has another pending case against AT&T, No. 2:23-cv-00398-JRG-RSP, which has been consolidated with this case. McKool is not listed as counsel of record in that case.

conduct occurring in connection with any proceeding before it." *In re Am. Airlines, Inc.*, 972 F.2d 605, 611 (5th Cir. 1992) (emphasis in original).[4] And because "[m]otions to disqualify counsel in Texas federal courts implicate federal law," courts are "not limited to the state's ethical rules but may also consider national norms of professional conduct, including the ABA Model Rules and the Model Code." *Rembrandt Techs., LP v. Comcast Corp.*, No. CIV.A. 2:05CV443, 2007 WL 470631, at *2 (E.D. Tex. Feb. 8, 2007) (citing *In re Dresser Indus., Inc.*, 972 F.2d 540, 543 (5th Cir. 1992); *In re Am. Airlines*, 972 F.2d at 610); *see also Hillman Grp., Inc. v. KeyMe, LLC*, 439 F. Supp. 3d 845, 851–52 (E.D. Tex. 2020) ("the ABA Model Rules of Professional Conduct … are the national standards to consider in reviewing motions to disqualify"); *Honeywell Int'l Inc. v. Philips Lumileds Lighting Co.*, No. 2:07-CV-463-CE, 2009 WL 256831, at *2, *3 (E.D. Tex. Jan. 6, 2009) (applying ABA Model Rules and "national ethical standards" to motion to disqualify).

**B.      A Disqualifying Conflict of Interest May Arise Even Where There Was No Prior Direct Attorney-Client Relationship**

In relevant part, Texas Disciplinary Rule 1.09 states: "(a) Without prior consent, a lawyer who personally has formerly represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client … if the representation in reasonable probability will involve a violation of Rule 1.05," which imposes a duty of confidentiality, or "if it is the same or a substantially related matter." *Staton Techiya, LLC v. Samsung Elecs. Co.*, No. 2:21-CV-00413-JRG-RSP, 2022 WL 16964746, at *1 (E.D. Tex. Nov. 16, 2022). Similarly, Rule 1.9 of the ABA Model Rules of Professional Conduct Rule states that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a

---

[4] All quotations cleaned up and emphases added unless otherwise specifically noted.

substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." *Id.*

While the foregoing rules pertain to former clients, a prior direct attorney-client relationship is not necessary to give rise to a disqualifying conflict of interest. Federal courts, including the Fifth Circuit, have applied the substantial relationship test to disqualify attorneys where the movant had a common interest with a former client. For example, the Fifth Circuit has explained that "[j]ust as an attorney would not be allowed to proceed against his former client in a cause of action substantially related to the matters in which he previously represented that client, an attorney should also not be allowed to proceed against a co-defendant of a former client wherein the subject matter of the present controversy is substantially related to the matters in which the attorney was previously involved, and wherein confidential exchanges of information took place between the various co-defendants in preparation of a joint defense." *Wilson P. Abraham Const. Corp. v. Armco Steel Corp.*, 559 F.2d 250, 253 (5th Cir. 1977). In other words, disqualification is required where the attorney was "privy to confidential information" in a substantially related matter even where there was no prior "direct attorney-client relationship." *Id.*

Further, in *Diva Limousine, Ltd. v. Uber Techs., Inc.*, No. 18-CV-05546-EMC, 2019 WL 144589 (N.D. Cal. Jan. 9, 2019), which is discussed further below, the court likewise found that the duty of confidentiality extends to non-clients under certain circumstances, and that "case law abounds with examples of orders disqualifying counsel that have not been the product of motions by present or former clients." *Id.* at *4. "In short, courts have applied the regular substantial relationship test even where there was no prior attorney-client relationship." *Id.* at *5 (disqualifying counsel where former client shared a common legal interest with the plaintiff and they had exchanged privileged and confidential information related to that common interest).

IV.     ARGUMENT

        A.      **McKool Smith's Prior Representation of ████ in a Substantially Related Matter Is a Clear Conflict of Interest**

The evidence conclusively establishes that (1) █████ represented by McKool Smith, and Headwater had a common legal interest with respect to their discussions in 2019 and 2020, and (2) McKool Smith received and reviewed Headwater's privileged and confidential common interest materials, including litigation materials and analysis relating to ██████ █. This constitutes a conflict of interest that requires disqualification under the applicable law.

        1.      **Headwater and ████ Shared a Common Legal Interest and McKool Smith Received Headwater's Privileged and Highly Confidential Information in Furtherance of That Common Interest**

Confidential information shared between parties remains confidential where those parties possess a common legal interest. *In re Whitcomb*, 575 B.R. 169, 173 (Bankr. S.D. Tex. 2017) (citing *In re Santa Fe Int'l. Corp.*, 272 F.3d 705, 710 (5th Cir. 2001)). "Confidentiality also extends to communications shared with other attorneys if done in order to further a common legal interest." *Id.*; *see also Diva Limousine*, 2019 WL 144589, at *7 ("[T]he common interest privilege applies where (1) a communication is made by separate parties in the course of a matter of common legal interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived."). "Although parties can memorialize a common interest agreement in writing, no written agreement is required for the common interest privilege to apply, since an agreement may be implied from conduct and situation, such as attorneys exchanging confidential communications from clients who have common interests in litigation." *Diva Limousine*, 2019 WL 144589, at *7.

Here, there can be no legitimate dispute that ████ and Headwater shared a common legal interest with respect to their negotiations and discussions in 2019 and 2020. The ████ NDA expressly states that that ████████

████████████████████████████████████████████████████████████

████ their potential business relationship. Ex. 3 ¶ 7. The common interest provision further states

that ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████ *Id.* The parties thus clearly intended that the

protections afforded by the common interest doctrine should be applied broadly. The substance of

the relationship further confirms the common legal interest between ████████ and Headwater.

████████████████████████████████████████. Thus, Headwater and

████████ had a common legal interest in the ████████████████████████.

There also can be no legitimate dispute that ████████ and its counsel at McKool Smith

in fact received and reviewed Headwater's privileged and confidential information in furtherance

of the parties' common interest. As set forth in detail above, starting in 2019, Mr. Krampath, Mr.

Hess—who is counsel of record for AT&T in this case—and other McKool Smith attorneys and

personnel met with Headwater's general counsel several times to discuss Headwater's ████

████████████████████████████████. Those discussions included issues relating to

████████████████████████████████████████████████████████████

████. Raleigh Decl. ¶¶ 11–27 & Exs. 4–9. To facilitate those discussions, Headwater gave

McKool Smith access to a data room containing over ████ files, including ████████

████████████████████████████████, Headwater's analyses

regarding issues such as ████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

11

██████████████████████████████ *Id.* ¶¶ 28–46 & Exs. 10, 19. Many of these

documents were specifically requested by Mr. Krampath, and he expressly confirmed that he

reviewed the documentation provided by Headwater. Exs. 9–14. Further, the ████████ access logs

show that McKool Smith attorneys and personnel accessed and downloaded Headwater's

documents hundreds of times. Exs. 10, 19.

McKool Smith owed a duty of confidentiality with respect to Headwater's common interest

materials, and should not be permitted to use its knowledge regarding Headwater's litigation

strategy and theories against Headwater in this matter. *See Diva Limousine*, 2019 WL 144589, at

*7 (holding that a "duty [of confidentiality] may be created where an attorney obtains …

information shared pursuant to a common interest agreement"). Indeed, Texas Disciplinary Rule

1.09 forbids representation where there is *either* a "reasonable probability will involve a violation

of Rule 1.05," which imposes a duty of confidentiality, *or* "if it is the same or a substantially related

matter." *Staton Techiya*, 2022 WL 16964746, at *1; *see also Diva Limousine*, 2019 WL 144589,

at *7 ("The substantial relationship test applies where an attorney is deemed to have a duty of

confidentiality to a nonclient arising out of a past representation."). McKool's representation of

AT&T fails on both counts.

> **2.      McKool's Representation of ██████████ in the Prior Discussions
> Regarding Headwater's Patent Portfolio and Litigation Strategy Is
> Substantially Related to the Subject Matter of this Case**

The Fifth Circuit has held that "the provision of legal advice on a substantially related

matter *by itself* requires disqualification." *In re Am. Airlines*, 972 F.2d at 619. This rule "serves

not only to ensure the fairness of particular trials, but also to safeguard the integrity of the attorney-

client relationship." *Id.* Further, "the subject matter does not need to be 'relevant' in the evidentiary

sense to be 'substantially related.'" *Staton Techiya*, 2022 WL 16964746, at *2. "It need only be

akin to the present action in a way reasonable persons would understand as important to the issues

involved." *Id.*; *see also Diva Limousine*, 2019 WL 144589, at *10 ("[C]ourts should not limit the comparison of the two representations to their precise legal and factual issues. The key inquiry is whether the nature of the former representation is such that confidential information material to the current dispute would normally have been imparted to the attorney.").[5]

Here, it is clear that McKool Smith's representation of ███████ in the prior discussions regarding ███████ prospective ████████████████████████████ ████████████████████████ is substantially related to the subject matter of this case. As discussed in detail above, those discussions pertained directly to Headwater's ███████ ████████████████████████████████████████ ████████████████████████████. The parties also specifically discussed Headwater's ████████████████████████████████████ ████████████████████████. Indeed, Headwater provided a confidential work-product ████████████████████████████████████ ███████[6] The ███████ access log indicates that this specific document was viewed by a McKool Smith at least on March 24, 2020. Ex. 19. One of the PowerPoint presentations provided to McKool Smith regarding Headwater's ███████ specifically identifies issues related to AT&T, █ ████████████.[7] Raleigh Decl. ¶ 29. The parties also specifically discussed ███████ ███████, which is discussed in the complaint and thus relevant to this case. *See* Dkt. 1 ¶ 14; Raleigh Decl. ¶ 25; Exs. 4, 6. The parties also discussed Headwater's ███████

---

[5] Comment 4B to Texas Disciplinary Rule 1.09 similarly explains that the "substantially related" test "primarily involves situations where a lawyer could have acquired confidential information concerning a prior client that could be used either to that prior client's disadvantage or for the advantage of the lawyer's current client or some other person."
[6] Headwater is willing to provide this document to the Court for *in camera* review.
[7] Headwater is willing to provide this document to the Court for *in camera* review.

████████████████████████████████████████████. McKool Smith also had access to a privileged

████████████████████████████████████████████████████████████████████████

█████████████████████ Raleigh Decl. ¶23; Ex. 11.

Any reasonable person would easily conclude that the prior discussions between

████████ and Headwater are important to the issues involved in this case, and that McKool Smith

acquired confidential information that could be used to Headwater's disadvantage and/or the

advantage of AT&T. The two matters are thus substantially related and McKool Smith's of AT&T

in a manner directly adverse to Headwater *requires* disqualification under all applicable rules.

Indeed, in *Diva Limousine*, the court granted disqualification under similar circumstances

where the attorney in question obtained the confidential information of the movant (Uber) pursuant

to a common legal interest with a former client. Although the parties "never reduced their

understanding to a formal written common interest agreement, they exchanged privileged

information and attorney work product through communications that were often marked as

privileged." 2019 WL 144589, at *7. And like here, the conflicted attorney "engaged in regularly-

scheduled telephone conferences with Uber during which counsel discussed legal strategy" and

other issues. *Id.* at *11. Thus, while the attorney never had a direct attorney-client relationship with

Uber, the court still found that the attorney's representation in a substantially related matter

required disqualification of the entire firm. *Id.* at *11–13. The same reasoning applies here.

**B.      Disqualification of McKool Smith Is Necessary to Preserve the Integrity of the Judicial Process and to Avoid Irreparable Harm to Headwater**

The rules are clear. McKool Smith's prior representation of ████████ in a substantially

related matter, by itself, requires disqualification in order to ensure fairness of the trial. *In re Am.*

*Airlines*, 972 F.2d at 619. No further analysis is necessary. However, it also bears noting that

McKool Smith's conflict of interest here is particularly egregious and its continued representation

14

of AT&T in this matter will irreparably harm Headwater for several additional reasons. As an initial matter, during the parties' meet and confer, McKool Smith admitted that they did not make any attempt to screen the attorneys and personnel who had access to, and in fact accessed, Headwater's privileged and confidential information. Ledahl Decl. ¶ 17. In fact, at least one of the attorneys who was directly involved in the prior ███████ /Headwater discussions, Kevin Hess, is counsel of record in this case. Apparently later realizing the severity of the situation, McKool Smith belatedly offered to screen the conflicted attorneys in exchange for Headwater's agreement not to seek disqualification. *Id.* ¶ 19. But the damage has already been done. AT&T's entire defense team has been tainted. And regardless, the Texas Disciplinary Rules make clear that screening is not a cure for such a conflict of interest. Rule 1.09(b) states that "when lawyers are or have become members of or associated with a firm, *none of them* shall knowingly represent a client if any one of them practicing alone would be prohibited from doing so by paragraph (a)."

Allowing McKool Smith to continue as counsel of record in this matter would not only irreparably harm Headwater with respect to this case, but could also taint Headwater's other pending cases against Samsung, Verizon, T-Mobile, and Motorola. It is highly likely that these defendants will be working together with respect to common issues such as validity and claim construction. Certainly the McKool Smith attorneys representing AT&T in this case will be coordinating with the attorneys representing AT&T in the consolidated -398 case. Disqualification is necessary to preserve the integrity of these judicial processes and avoid substantial irreparable harm to Headwater.

## V.     CONCLUSION

For the foregoing reasons, the law firm McKool Smith should be disqualified from representing A&T in this case.

Dated:  January 25, 2024

Respectfully submitted,

/s/ *Brian Ledahl*

Marc Fenster
CA State Bar No. 181067
Email: mfenster@raklaw.com
Reza Mirzaie
CA State Bar No. 246953
Email: rmirzaie@raklaw.com
Brian Ledahl
CA State Bar No. 186579
Email: bledahl@raklaw.com
Ben Wang
CA State Bar No. 228712
Email: bwang@raklaw.com
Dale Chang
CA State Bar No. 248657
Email: dchang@raklaw.com
Paul Kroeger
CA State Bar No. 229074
Email: pkroeger@raklaw.com
Neil A. Rubin
CA State Bar No. 250761
Email: nrubin@raklaw.com
Kristopher Davis
CA State Bar No. 329627
Email: kdavis@raklaw.com
James S. Tsuei
CA State Bar No. 285530
Email: jtsuei@raklaw.com
Philip Wang
CA State Bar No. 262239
Email: pwang@raklaw.com
Amy Hayden
CA State Bar No. 287026
Email: ahayden@raklaw.com
Jason M. Wietholter
CA State Bar No. 337139
Email: jwietholter@raklaw.com
**RUSS AUGUST & KABAT**
12424 Wilshire Blvd. 12th Floor
Los Angeles, CA 90025
Telephone: 310-826-7474

*Attorneys for Plaintiff Headwater*

16

*Research LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 25, 2024, I electronically filed the foregoing document with the Clerk of the Court for the Eastern District of Texas using the ECF System under seal, and served defendants with a copy via electronic mail.

/s/ *Brian Ledahl*
Brian Ledahl

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I hereby certify that the foregoing document is authorized to be filed under seal pursuant to the Protective Order entered in this case.

/s/ *Brian Ledahl*
Brian Ledahl

18