PUBLIC REDACTED VERSION

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

|  |  |
|---|---|
| **HEADWATER RESEARCH LLC,** | **Civil Action No.  2:23-cv-00397** |
| **Plaintiff,** |  |
| **vs.** | **LEAD CASE** |
| **AT&T INC., AT&T SERVICES, INC., AT&T MOBILITY, LLC AND AT&T CORP.,** | **JURY TRIAL** |
| **Defendants.** |  |
| **HEADWATER RESEARCH LLC,** | **Civil Action No.  2:23-cv-00398** |
| **Plaintiff,** |  |
| **vs.** |  |
| **AT&T INC., AT&T SERVICES, INC., AT&T MOBILITY, LLC AND AT&T CORP.,** | **JURY TRIAL** |
| **Defendants.** |  |

### AT&T'S RESPONSE IN OPPOSITION TO MOTION TO DISQUALIFY MCKOOL SMITH AS COUNSEL FOR DEFENDANTS

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................1

II.     BACKGROUND ..................................................................................................2

    A.      McKool Smith Declines to Represent Headwater ...................................2

    B.      Interdigital Engages McKool Smith to Facilitate Due
            Diligence on a Potential Commercial Transaction with
            Headwater ................................................................................................2

    C.      McKool Smith Represents AT&T in the Present Litigation....................4

III.    LEGAL STANDARDS ........................................................................................4

    A.      Motions to Disqualify ..............................................................................4

    B.      Common Interest Privilege ......................................................................6

IV.     ARGUMENT .......................................................................................................6

    A.      Headwater Misstates Fifth Circuit Precedent on
            Disqualification........................................................................................6

    B.      Headwater Fails to Establish a Disqualifying Conflict
            Under Its Common-Interest Privilege Theory .........................................9

    C.      Headwater Fails to Establish a Substantial Relationship
            Between This Litigation and the Prior Commercial
            Negotiations ...........................................................................................13

    D.      Headwater Fails to Address the Relevant Legal Standard....................14

V.      CONCLUSION..................................................................................................15

████████████████

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*Abney v. Wal-Mart*,
   984 F. Supp. 526 (E.D. Tex. 1997) .......................................................................5

*Barq v. Coca-Cola Co.*,
   No. 1:07-CV-1032-LG-RHW, 2008 WL 11344881 (S.D. Miss. June 26, 2008)..................13

*Benson v. Rosenthal*,
   No. CV 15-782, 2016 WL 3001129 (E.D. La. May 25, 2016) ................................................11

*Biote Med., LLC v. Jacobsen*,
   No. 4:18-CV-866, 2020 WL 2813201 (E.D. Tex. May 29, 2020)............................................5

*Diva Limousine, Ltd. v. Uber Techs., Inc.*,
   No. 18-CV-05546-EMC, 2019 WL 144589 (N.D. Cal. Jan. 9, 2019)..............................7, 8, 9

*Duncan v. Merrill Lynch Pierce, Fenner & Smith*,
   646 F.2d 1020 (5th Cir. 1981) .......................................................................5

*F.D.I.C. v. U.S. Fire Ins. Co.*,
   50 F.3d 1304 (5th Cir. 1995) .......................................................................5

*Hillman Grp., Inc. v. KeyMe, LLC*,
   439 F. Supp. 3d 845 (E.D. Tex. 2020)...................................................................8

*Honeywell Int'l Inc. v. Philips Lumileds Lighting Co.*,
   No. 2:7-cv-463, 2009 WL 256831 (E.D. Tex. Jan 6, 2009) ......................................8

*Horaist v. Doctor's Hosp. of Opelousas*,
   255 F.3d 261 (5th Cir. 2001) .......................................................................6, 14

*In re Am. Airlines, Inc.*,
   972 F.2d 605 (5th Cir. 1992) .......................................................................5, 8

*In re Dresser Indus., Inc.*,
   972 F.2d 540 (5th Cir. 1992) .......................................................................8

*In re Santa Fe Intern. Corp.*,
   272 F.3d 705 (5th Cir. 2001) ................................................................. *passim*

*In re Whitcomb*,
   575 B.R. 169 (Bankr. S.D. Tex. 2017) ..........................................................8

███████████████

*Johnston v. Harris Cnty. Flood Control Dist.*,
  869 F.2d 1565 (5th Cir. 1989) .............................................................5, 6

*Marquis v. Sadeghian*,
  Case No. 4:19-CV-626-RWS-KPJ, 2021 WL 4148754 (E.D. Tex. Sept. 13, 2021) ...............15

*Maxell, Ltd. v. Apple Inc.*,
  No. 5:19-CV-00036-RWS, 2021 WL 1100098 (E.D. Tex. Mar. 2, 2021) ..........................4, 5

*McCuin v. Texas Power & Light Co.*,
  714 F.2d 1255 (5th Cir. 1983) ................................................................5

*Occu-Health, Inc. v. Mississippi Space Servs.*,
  No. 1:06-CV-159-LG-RHW, 2006 WL 2290472 (S.D. Miss. Aug. 9, 2006) ........................13

*Rembrant Techs., LP v. Comcast Corp.*,
  No. 2:05CV443, 2007 WL 470631 (E.D. Tex. Feb. 8, 2007)....................................8

*Staton Techiya, LLC v. Samsung Elecs. Co.*,
  No. 2:21-cv-413, 2022 WL16964746 (E.D. Tex. Nov. 16, 2022)...............................8

*Wilson P. Abraham Const. Corp. v. Armco Steel Corp.*,
  559 F.2d 250 (5th Cir. 1977) ................................................................7

## OTHER AUTHORITIES

ABA Model Rule 1.9 ..............................................................................8

Texas Disciplinary Rule 1.09....................................................................8

## I.    INTRODUCTION

Headwater's Motion to Disqualify does not come close to satisfying the "exacting standard" that would justify the "extreme remedy" of depriving AT&T of its choice of counsel. AT&T's counsel, McKool Smith, has never represented Headwater in *any* capacity in *any* matter at *any* time. There has never been an attorney-client relationship between Headwater and McKool Smith. Nor has McKool Smith ever represented a co-litigant to Headwater in pending or anticipated litigation. Instead, Headwater's motion revolves entirely around McKool Smith's representation of non-party Interdigital ***opposite Headwater*** during negotiations for an unconsummated commercial transaction between Interdigital and Headwater in 2020. But McKool Smith's prior representation of a counter-party in commercial negotiations does not create an ethical conflict—much less a disqualifying conflict. And no Court has held otherwise.

Beyond mere factual deficiencies, Headwater's motion misstates the law time-and-again. Unable to establish a prior attorney-client relationship with McKool Smith, Headwater premises its entire motion on the argument that Headwater and Interdigital shared a common-interest privilege as counterparties in commercial negotiations. In arguing this position, however, Headwater omits the governing Fifth Circuit standard for common-interest privilege and instead recites irrelevant precedent from California courts. Headwater filed this case in Marshall, not San Francisco. The applicable standard, which Headwater ignores, narrowly limits common-interest privilege to "communications between co-defendants in actual litigation and their counsel…and communications between *potential* co-defendants and their counsel." *In re Santa Fe Intern. Corp.*, 272 F.3d 705, 710 (5th Cir. 2001). Headwater and Interdigital were never co-parties in actual or potential litigation; they were counterparties in a potential commercial transaction. Worse still, Headwater skips the second prong of the disqualification analysis, which requires a

███████████

meticulous balancing of factors surrounding potential risk for impropriety, public interest, and deference to choice of counsel. This is akin to moving to transfer without analyzing the *Volkswagen II* factors or demanding lost profits without reference to the *Panduit* factors. Headwater cannot meet its burden for disqualification by simply ignoring the standard. For these reasons, AT&T requests that the Court afford deference to AT&T's choice of counsel and deny Headwater's Motion to Disqualify.

## II.    BACKGROUND

### A.    McKool Smith Declines to Represent Headwater

McKool Smith has never represented Headwater in any matter. Kamprath Decl. ¶ 3. Nor has McKool Smith ever been a co-party with Headwater in any litigation in any venue. *Id*. In fact, when Headwater approached a former McKool Smith attorney about a potential representation in 2013 and 2017, McKool Smith passed on the engagement due to conflicts with existing McKool Smith clients that Headwater considered potential licensing targets. Mot. at 2.

### B.    Interdigital Engages McKool Smith to Facilitate Due Diligence on a Potential Commercial Transaction with Headwater

In November 2019, Headwater and Interdigital entered into business discussions ███████████████████████████████████████████████████████████████ ████████████████████████████████████ Mot. at 2-3. ███████ ████████████████████████████████ Kamprath Decl. ¶ 5. To facilitate those discussions, Interdigital and Headwater entered into an NDA that governed the sharing of information for the sole purpose of "considering a business relationship." Dkt. No. 44-5 ¶ 1.

Interdigital retained McKool Smith to assist in its due diligence efforts. Kamprath Decl. ¶ 2. These efforts related to Interdigital's commercial assessment of the Headwater portfolio and



were unrelated to any litigation. *Id.* ¶¶ 2, 3, 8. Headwater █████████████████████

█████████████████████████████████████████████████████████████████████████████

███████████████████████████ *Id.* ¶ 7. It was clear to all parties that McKool Smith was

representing Interdigital in ████████████████████████████████████████████████████

██████ *Id.* ¶¶ 2-4. McKool Smith never engaged in discussions with Headwater about potential

litigation against AT&T. *Id.* ¶ 7. AT&T was an active McKool Smith client at the time and the

firm would never have discussed launching a lawsuit against a current client. *Id.*

McKool Smith's diligence review was led by Principals Ted Stevenson, Richard

Kamprath, and Chris Bovenkamp. *Id.* ¶ 2. Mr. Bovenkamp and Mr. Stevenson departed McKool

Smith in March and June 2021, respectively. *Id.* Mr. Kamprath remains at the firm but has

performed no work on the present litigation. *Id.* McKool Smith attorney Kevin Hess briefly

worked on the Interdigital diligence review as an associate in Spring of 2020. Hess Decl. ¶ 2. Mr.

Hess's limited work on the diligence involved ███████████████████████████████████

█████████████████████████████████████████████████████████████████████████████

████████████████████████████████████ *Id.* ¶ 3. All told, Mr. Hess billed fewer than

30 hours ██████████████████ none of which had any relation to a potential lawsuit against

AT&T. *Id.*

Ultimately, the business negotiations ████████████████████████████████████████

███████████████ Mot. at 6. Thereafter, Headwater notified McKool Smith of the NDA and

demanded that McKool Smith return or destroy Headwater's confidential information and refrain

from using such information. Dkt. No. 44-19. Far from characterizing McKool Smith's

engagement as encompassing potential litigation or common-interest privilege, the letter stated

██████████████

that █████████████████████████████████████████████████████████

████████████████████████  *Id.* (emphasis added). Mr. Stevenson promptly responded and

informed Headwater that McKool Smith had complied with the NDA." Dkt. No. 44-20.

### C.   McKool Smith Represents AT&T in the Present Litigation

Three and a half years after the termination of the failed Headwater-Interdigital patent

acquisition, Headwater filed the present suit against AT&T. On November 6, 2023, a week

before AT&T filed its answer, Nicholas Mathews emailed counsel for Headwater, copying Mr.

Hess, advising Headwater that McKool Smith would be representing AT&T in the litigation. Ex.

1. Three days later, Mr. Hess emailed counsel for Headwater inquiring about a voluntary

dismissal of an improperly named AT&T entity. *Id.*

Two weeks after this initial email exchange, counsel for Headwater revealed that it "plans

to file a motion to disqualify McKool Smith as counsel in this action." Ex. 2. The parties

conferred on November 31, 2023. On the meet and confer, McKool Smith offered to alleviate

Headwater's concerns by implementing an ethical wall screening attorneys who had previously

worked on the Interdigital diligence, but Headwater declined this proposal. Mathews Decl. ¶ 6.

Despite learning of McKool Smith's representation of AT&T on November 6, 2023, Headwater

waited until January 25, 2024, to file its motion to disqualify.

## III.   LEGAL STANDARDS

### A.   Motions to Disqualify

"As disqualification is a procedural matter not unique to patent law, regional circuit law

applies." *Maxell, Ltd. v. Apple Inc.*, No. 5:19-CV-00036-RWS, 2021 WL 1100098, at *6 (E.D.

Tex. Mar. 2, 2021). In the Fifth Circuit, a motion to disqualify is a substantive motion "affecting

the rights of the parties" and is thus "determined by applying standards developed under federal

law." *Id*. (citing *In re Am. Airlines, Inc.*, 972 F.3d 605, 610 (5th Cir. 1992). The party moving for disqualification bears the burden of establishing that the circumstances of the case warrant disqualification. *Abney v. Wal-Mart*, 984 F. Supp. 526, 530 (E.D. Tex. 1997).

The right to choose counsel is a bedrock principal of the judicial system. In the Fifth Circuit, "the right to counsel in civil cases is no less fundamental" than the sixth amendment right to counsel in criminal proceedings, as it likewise "springs from both statutory authority and from the constitutional right to due process of law." *McCuin v. Texas Power & Light Co.*, 714 F.2d 1255, 1262 (5th Cir. 1983). Disqualification is "an extreme remedy that will not be imposed lightly." *Duncan v. Merrill Lynch Pierce, Fenner & Smith*, 646 F.2d 1020, 1025 n. 6 (5th Cir. 1981). Trial courts must consider disqualification motions "with meticulous deference to the litigant's rights." *F.D.I.C. v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1314 (5th Cir. 1995).  Courts in the Eastern District of Texas subject motions to disqualify to "an ***exacting*** standard both to protect a party's right to counsel of choice as well as to discourage the use of such as a dilatory trial tactic." *Biote Med., LLC v. Jacobsen*, 2020 WL 2813201, at *2 (E.D. Tex. May 29, 2020).

The attorney disqualification rules are not to be "mechanically applied." *See Johnston v. Harris Cnty. Flood Control Dist.*, 869 F.2d 1565, 1569 (5th Cir. 1989). Rather, the Fifth Circuit has directed courts to carefully "consider '[a]ll the facts particular to [the] case . . . in the context of the relevant ethical criteria and with meticulous deference to the litigant's rights.'" *Maxell*, No. 5:19-CV-00036, 2021 WL 1100098, at *6 (quoting *In re ProEducation Int'l, Inc.*, 587 F.3d 296, 300 (5th Cir. 2009). To that end, courts are to consider a motion to disqualify "in light of the litigant's rights and the public interest, considering 'whether a conflict has (1) the appearance of impropriety in general, or (2) a possibility that a specific impropriety

will occur, and (3) the likelihood of public suspicion from the impropriety outweighs any social interests which will be served by the lawyer's continued participation in the case.'" *Id.* (quoting *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 266 (5th Cir. 2001).

### B.    Common Interest Privilege

While disclosure of privileged information to a third party typically extinguishes a future claim of privilege, the Fifth Circuit has recognized two types of communications with third parties that do not constitute a waiver of privilege: (1) communications between co-defendants in actual litigation and their counsel, and (2) communications between potential co-defendants and their counsel. *In re Santa Fe*, 272 F.3d at 710. The Fifth Circuit has made clear that the second category should be "construed narrowly" so that it extends only where there is "a palpable threat of litigation at the time of the communication." *Id.* at 710-11.  A "mere awareness" that a party's conduct "might" cause it to become a "possible future co-defendant [with] another" is not enough. *Id.*

## IV.    ARGUMENT

### A.    Headwater Misstates Fifth Circuit Precedent on Disqualification

The entirety of Headwater's motion rests on a blatant misstatement of law. In the Fifth Circuit, "a party seeking to disqualify opposing counsel on the ground of a former representation must establish two elements: (1) an actual attorney-client relationship between the moving party and the attorney he seeks to disqualify and (2) a substantial relationship between the subject matter of the former and present representations." *Johnston*, 869 F.2d at 1569. Yet it is undisputed that McKool Smith has never had an attorney-client relationship with Headwater in any matter—much less a substantially related matter. To the contrary, McKool Smith previously

advised Headwater in 2017 that it could not offer representation due to conflicts with existing McKool Smith clients. Mot. at 2.

Unable to establish a prior attorney-client relationship with McKool Smith, Headwater seizes on language from *Wilson P. Abraham Const. Corp. v. Armco Steel Corp.*, 559 F.2d 250, 253 (5th Cir. 1977) to argue that "disqualification is required where the attorney was privy to confidential information in a substantially related matter even where there was no prior direct-attorney-client relationship." Mot. at 9. This argument misstates the law. In *Armco Steel* the Fifth Circuit did not hold that an attorney is subject to disqualification if he merely receives confidential information from a non-client. Instead, the court narrowly held that "an attorney should also not be allowed to proceed against a co-defendant of a former client wherein the subject matter of the present controversy is substantially related to the matters in which the attorney was previously involved, and wherein confidential exchanges of information took place between the various co-defendants in preparation of a joint defense." *Armco Steel*, 559 F.2d at 253. Thus for Headwater to prevail under *Armco Steel*, it must establish that (1) McKool Smith represented a co-defendant to Headwater in actual litigation, (2) McKool Smith received confidential information from Headwater in preparation for a joint defense, and (3) McKool Smith's prior representation of a co-defendant is substantially related to this action. Headwater's motion should be denied because McKool Smith has never represented a co-defendant (or co-plaintiff) to Headwater in any litigation and never received confidential information from Headwater in furtherance of a joint defense (or joint assertion) in such a litigation.

Headwater fares no better under its other legal authorities. For instance, Headwater cites *Diva Limousine, Ltd. v. Uber Techs., Inc.*, 2019 WL 144589 (N.D. Cal. Jan. 9, 2019) seven times

for the proposition that prior disclosure of related materials under a common-interest privilege is sufficient grounds for disqualification. *See* Mot. at 10. As a threshold matter, *Diva Limousine* is legally inapposite here, as it applies California state law, not Fifth Circuit law. *Diva Limousine*, 2019 WL 144589, at *6. More importantly, Headwater's lengthy summation of *Diva Limousine*, omits the critical fact: the attorney who was the target of Uber's disqualification motion was previously counsel for Uber's co-plaintiff in a related litigation and regularly interacted with Uber in furtherance of their common legal interest in that litigation. *Id.* at *1, *7. None of Headwater's legal authorities stand for the proposition that the exchange of confidential information outside of litigation gives rise to a "prior representation" disqualification.[1]

Headwater's reliance on Texas Disciplinary Rule 1.09 and ABA Model Rule 1.9 are equally misplaced. These rules prohibit an attorney from being adverse to a former client in a substantially related matter without informed consent. These rules do not prohibit an attorney from being adverse to a non-client that was previously a counterparty in another matter. And Headwater cites no authority extending these rules to such a circumstance. Simply put, Headwater fails to proffer a single case from any jurisdiction—much less the Fifth Circuit— where an attorney is disqualified for previously representing a counterparty to a non-client outside of actual or threatened litigation. This dearth of authority is fatal to Headwater's motion.

---

[1] *See Hillman Grp., Inc. v. KeyMe, LLC*, 439 F. Supp. 3d 845, 853 (E.D. Tex. 2020) (finding an attorney concurrently representing clients); *Honeywell Int'l Inc. v. Philips Lumileds Lighting Co.*, No. 2:7-cv-463, 2009 WL 256831, at *3 (E.D. Tex. Jan 6, 2009) (same); *Rembrant Techs., LP v. Comcast Corp.*, No. 2:05CV443, 2007 WL 470631, at *3 (E.D. Tex. Feb. 8, 2007) (same); *In re Dresser Indus., Inc.*, 972 F.2d 540, 544 (5th Cir. 1992) (same); *Staton Techiya, LLC v. Samsung Elecs. Co.*, No. 2:21-cv-413, 2022 WL16964746, at *1 (E.D. Tex. Nov. 16, 2022) (finding an attorney formerly represented a client); *In re Am. Airlines, Inc.*, 972 F.2d 605, 614 (5th Cir. 1992) (same); *In re Whitcomb*, 575 B.R. 169, 173 (Bankr. S.D. Tex. 2017) (same).

**B.      Headwater Fails to Establish a Disqualifying Conflict Under Its Common-Interest Privilege Theory**

Unable to establish a theory of disqualification under any existing legal authority, Headwater tacitly invites the Court to create new precedent. Specifically, Headwater argues that disqualification is appropriate any time an opposing attorney has previously received information that it contends to be subject to common-interest privilege that is substantially related to the existing proceedings—regardless of whether that information was exchanged amongst co-defendants in actual litigation and regardless of whether that information was exchanged in furtherance of preparing a joint defense. Mot. at 9-10.

Of course, this errant argument presumes that the materials exchanged between Interdigital and Headwater in furtherance of their commercial negotiations were subject to a common-interest privilege. In yet another misstatement of law, Headwater asserts that common interest is established if three elements are satisfied:

> "[T]he common interest privilege applies where (1) a communication is made by separate parties in the course of a matter of common legal interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived."

Mot. at 10 (quoting *Diva Limousine*, 2019 WL 144589, at *7). After announcing this legal standard, Headwater boldly proclaims that "there can be no legitimate dispute that Interdigital and Headwater shared a common legal interest with respect to their negotiations and discussions in 2019 and 2020." *Id*. The problem of course, is that this three-prong test is not the test for common-interest privilege in the Fifth Circuit. It is the test for common-interest privilege in the Northern District of California. The Fifth Circuit's test for common-interest privilege is narrower and materially different than the California test that Headwater recites. In the Fifth Circuit, common-interest privilege applies only to (1) "communications between co-defendants in actual

9

████████████████

litigation and their counsel," and (2) "communications between *potential* co-defendants and their counsel," provided that the threat of potential litigation is "palpable" at the time the communication was made. *In re Santa Fe Intern. Corp.*, 272 F.3d at 710.

Headwater cannot establish common-interest privilege under the Fifth Circuit standard because its communications with Interdigital were not made as co-parties to actual litigation or under the palpable threat of imminent litigation. Rather, the communications were made during arms-length negotiations between counterparties exploring a possible asset purchase agreement wherein Interdigital would have acquired some number of patents owned by Headwater. Headwater's own declarant, Gregory Raleigh, accurately describes the nature of McKool Smith's representation of Interdigital: ████████████████████████████████

████████████████████████████████████

████████████ Dkt. No. 44-2 ¶ 3. As revealed by Headwater's selectively redacted exhibits, the documents exchanged during those negotiations are typical of what might be revealed between counterparties ████████████████████████████████

████████████████████████████ Dkt. No. 44-9.[2]

These negotiations were not made in the context of any existing or threatened litigation. Rather, Interdigital was investigating ████████████████████████

████████████████████████████████████

████████████████████████████████████

---

[2] AT&T is disadvantaged in responding to Headwater's allegations, as Headwater has redacted or selectively clipped portions of the data room logs without producing a privilege log with information sufficient to challenge the purported privilege. Headwater redacted patent numbers from its exhibits, making it impossible to tell what the ████████ relate to. Counsel for AT&T requested a complete an unredacted data room log to assess what files were actually accessed, but counsel for Headwater refused.

██████████

██████████████████████████████████

██████████████████████████████████

██████████████████████████████████

██████████████████████████████████

██████████████████████████████████

█████████████████████ These sort of speculative negotiations that generally

contemplated the possibility of litigation falls short of establishing common-interest privilege in

the Fifth Circuit. *In re Santa Fe Intern. Corp.*, 272 F.3d at 711 (finding that "a mere awareness

that one's questionable conduct might someday result in litigation" is too speculative to warrant

common-interest privilege); *Benson v. Rosenthal*, No. CV 15-782, 2016 WL 3001129, at *6

(E.D. La. May 25, 2016). Furthermore, Headwater has provided no evidence that Headwater and

Interdigital were ever contemplating litigation in which they would be *co-plaintiffs*. To the

contrary, ████████████████████████████████████████

Kamprath Decl. ¶ 4.

Unable to establish common-interest privilege under the Fifth Circuit standard,

Headwater leans heavily on boilerplate language in its NDA with Interdigital. To be clear,

McKool Smith is not a party to the NDA, did not negotiate the NDA, and had not reviewed the

NDA before Interdigital executed it on November 23, 2019. *Id.* ¶ 9.  In any event, the NDA does

not independently establish a common-interest privilege or obviate Headwater's burden to

establish such a privilege. If anything, the NDA underscores that the Headwater-Interdigital

negotiations were in furtherance of a business relationship—not litigation. Paragraph 1 of the

NDA, titled ████████████████████████████████

11



Dkt. No. 44-5 ¶ 1. The NDA further clarifies that ███████████████████ *Id.* ¶ 4. ███████████ ██████████████████████. *Id.* ¶ 8.

As for establishing a common interest, the NDA equivocates, noting that ████████ *Id.* ¶ 7 (emphasis added). This circumspect language does not—and indeed cannot—independently establish a common-interest privilege. At best it merely seeks to avoid a waiver of attorney-client privilege to the extent possible. Of course, the bounds and contours of privilege are defined by the courts, not by contract. Otherwise private parties would unilaterally pronounce all of their communications to be privileged and non-discoverable.

The lynchpin of Headwater's motion is the unsubstantiated assertion that Headwater and Interdigital's communications were subject to a common-interest privilege. But aside from a self-serving and irrelevant NDA, Headwater offers no legal or factual basis to establish a common legal interest under *Santa Fe* between counterparties to a potential ████████ ████. Headwater and Interdigital were never co-litigants in any actual or potential litigation. They were counterparties looking to maximize their bargaining position with one another. Headwater's motion fails on this point alone.

████████████████

### C. Headwater Fails to Establish a Substantial Relationship Between This Litigation and the Prior Commercial Negotiations

Even if Headwater were able to establish a common legal interest with Interdigital (it cannot), it has failed to carry its burden to establish that the subject matter of the negotiations is substantially related to the present lawsuit as to warrant the extreme remedy of disqualification. A "merely tangential relationship between the two matters" will not suffice. *Occu-Health, Inc. v. Mississippi Space Servs.*, No. 1:06-CV-159-LG-RHW, 2006 WL 2290472, at *3 (S.D. Miss. Aug. 9, 2006); *see also Barq v. Coca-Cola Co.*, No. 1:07-CV-1032-LG-RHW, 2008 WL 11344881, at *4 (S.D. Miss. June 26, 2008) ("the relationship between the two matters is too tangential to create an appearance of impropriety that overcomes Plaintiff's choice of counsel").

Rather than provide any concrete analysis of how this lawsuit relates to the prior negotiations, Headwater relies on generalized characterizations of its documents and vague assertions that the parties discussed ████████████████████████████ ████████████████████████████ Mot. at 1. Headwater makes vanishingly little effort to tie those alleged discussions to the subject matter of this case. Although Headwater contends that it loaded 1,500 files to the Interdigital data room, it identifies only two specific documents as having a nexus with this case: ████████████████████ ████████████████████████████████ With respect to the ████████ Headwater redacted the title, to make it impossible to tell whether the ██ concerns ████████████████████. Headwater's silence on this point indicates the latter. Furthermore, the data log shows that only a single McKool Smith attorney, Chris Bovenkamp, viewed the ████████ for *less than a minute* before clicking through to the next file. Dkt. No. 44-21. Mr. Bovenkamp left McKool Smith in March 2021. As for the lone ████████

███████████

███████, Headwater's description is so vague as to be useless. It is unclear whether the alleged ████████████████ are confidential, privileged, or have any connection with the present dispute. Furthermore, Headwater's motion fails to demonstrate that any McKool Smith attorney viewed or downloaded the file.

That Headwater can muster only two documents that have any nexus to the case belies its assertion that its prior negotiations with Interdigital are substantially related to the present litigation. In any event, disqualifying counsel requires much more than vague generalizations. Disqualification demands an "exacting" standard employed with "meticulous deference to the litigant's rights." Headwater's vague and conclusory assertions fail to meet this standard.

### D.     Headwater Fails to Address the Relevant Legal Standard

In addition to misstating (or altogether ignoring) the Fifth Circuit's holdings in *Armco Steel* and *Santa Fe*, Headwater asserts that the Court is *required* to disqualify McKool Smith because this case is substantially related to the Headwater-Interdigital negotiations. Mot. at 14. Once again, this is not the law. The disqualification analysis does not start and end with the substantial relationship test, as Headwater posits. Courts in this Circuit must also assess the following factors before issuing the extreme remedy of disqualification: "whether a conflict has (1) the appearance of impropriety in general, or (2) a possibility that a specific impropriety will occur, and (3) the likelihood of public suspicion from the impropriety outweighs any social interests which will be served by the lawyer's continued participation in the case." *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 266 (5th Cir. 2001) (citations omitted). Headwater's motion does not mention these critical factors, much less establish that these factors weigh in favor of disqualification. Headwater's omission of these factors belies the relief it seeks.

14

████████████████

In any event, the undisputed evidence reveals that there is no undue threat of apparent or actual impropriety that would give rise to public suspicion. To the contrary, Headwater's own declarations demonstrate that McKool Smith fully complied with the NDAs by promptly deleting all Headwater materials provided during the diligence and ensuring that its attorneys "will continue to refrain from disclosure or use of Headwater information." Dkt. No. 44-20. Moreover, with one exception, the McKool Smith attorneys who worked on the Headwater diligence have either left the firm or have not worked on the present matter. The only McKool Smith attorney who was even tangentially involved in both this case and the Headwater diligence is Kevin Hess. Headwater's logs do not show that Mr. Hess accessed the data room. More importantly, Mr. Hess's declaration explains that he worked fewer than 30 hours on the Interdigital diligence project, ██████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████ Mr. Hess's brief involvement in the Headwater ████████ poses no threat of a specific impropriety that would undermine public trust in the judicial system. Moreover, the fact that Headwater rejected McKool Smith's offer to wall-off Mr. Hess from this matter at the very outset of the case to resolve the dispute demonstrates that Headwater had no genuine concern of impropriety and is instead using disqualification as "a procedural weapon[] advancing purely tactical purposes, such as delay and harassment." *Marquis v. Sadeghian*, Case No. 4:19-CV-626-RWS-KPJ, 2021 WL 4148754, at *3 (E.D. Tex. Sept. 13, 2021).

## V.      CONCLUSION

For the foregoing reasons, AT&T respectfully requests that the Court deny Headwater's Motion to Disqualify.

15

Dated: February 9, 2024

Respectfully submitted,

/s/ *Nicholas Mathews*
Nicholas Mathews (Lead Counsel)
Texas State Bar No. 24085457
nmathews@McKoolSmith.com
Erik B. Fountain
Texas State Bar No. 24097701
efountain@mckoolsmith.com
Alexander J. Chern
Texas State Bar No. 24109718
achern@McKoolSmith.com
Clare Churchman
Texas State Bar No. 24132041
cchurchman@mckoolsmith.com
**MCKOOL SMITH, P.C.**
300 Crescent Court Suite 1500
Dallas, TX 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

Kevin Hess
Texas State Bar No.
khess@mckoolsmith.com
**MCKOOL SMITH, P.C.**
303 Colorado Street, Suite 2100
Austin, TX 78701
Telephone: (512) 692-8752

Kaylee E. Hoffner
Texas State Bar No. 24127036
khoffner@McKoolSmith.com
**MCKOOL SMITH, P.C.**
600 Travis Street Suite 7000
Houston, TX 77002
Telephone: (713) 485-7300
Telecopier: (713) 485-7344

Deron R. Dacus
State Bar No. 00790553
ddacus@dacusfirm.com
**THE DACUS FIRM, PC**
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Telephone: (903)705-1117
Facsimile: (903) 581-2543

**AT&T CORP., AT&T INC., AT&T MOBILITY LLC, AND AT&T SERVICES INC.**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has

been served on all counsel of record via the Court's ECF system on February 9, 2024.

/s/ *Nicholas Mathews*
Nicholas Mathews

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I hereby certify that the foregoing document is authorized to be filed under seal pursuant

to the Protective Order entered in this case.

/s/ *Nicholas Mathews*
Nicholas Mathews