# Exhibit 2

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| HEADWATER RESEARCH LLC, § § *Plaintiff*, § § v. § § SAMSUNG ELECTRONICS CO., LTD. § and SAMSUNG ELECTRONICS § AMERICA, INC., § § *Defendants*. § | CIVIL ACTION NO. 2:22-CV-00422-JRG-RSP |

## MEMORANDUM ORDER

Before the Court is Headwater's Motion to Strike Certain Opinions of Samsung's Damages Expert Dr. Keith R. Ugone (Dkt. No. 255). For the reasons provided below, the Motion is **GRANTED** only in part.

### I. APPLICABLE LAW

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether

1

particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

## II. ANALYSIS
### A. SETTLEMENT LICENSES

Headwater contends that Dr. Ugone's affirmative opinion as to Samsung's 2019 settlement

and license agreement with Seven Networks LLC and Samsung's 2020 settlement agreement with Bell Northern Research should be stricken. Headwater contends Dr. Ugone fails to account for key distinguishing facts for each.

Headwater contends that both licenses are lump sum licenses and that Dr. Ugone does not perform the requisite comparison to the hypothetical negotiation. Headwater contends Dr. Ugone did not have sales, revenue, or infringing use information upon which to compare the lump sum in those licenses with the hypothetical negotiation.

Headwater also complains of the adjustments Dr. Ugone makes or does not make. First, Headwater contends Dr. Ugone's term adjustment improperly assumes the term of the licensed patents begins six years prior the associated complaints, but this assumption is unsupported. For the Seven Networks license, Headwater contends the asserted patents issued after the date that Dr. Ugone assumes damages began. For the Bell license, Headwater contends Samsung already had a license well before the date that Dr. Ugone assumes damages began. Second, Headwater contends that Dr. Ugone improperly addresses the fact that both settlement licenses provide a worldwide license by comparing Samsung's worldwide sales to sales of the U.S. smartphones accused in this case. Headwater contends this is improper because both settlement licenses did not include patents for all world-wide territories. Last, Headwater complains Dr. Ugone makes no adjustments for that fact that these agreements were portfolio licenses or that they were settlement agreements.

Samsung responds that Dr. Ugone appropriately analyzes the economic differences between the licenses and the hypothetical negotiation. First, Samsung contends there is no requirement that there be evidence to calculate the royalty rate from a lump sum license. Samsung also argues it is sufficient that Dr. Ugone has opined that the covered sales would be the same or broader in the agreement as compared to the hypothetical negotiation. Samsung further argues

there is no *per se* rule that a settlement agreement is not comparable and it is sufficient that Dr. Ugone considered the settlement nature of the agreements.

Importantly here there can be no doubt that the settlement licenses are technically comparable, since they license the patent in suit. There is also no doubt that Dr. Ugone extensively considers the differences between the hypothetical negotiation and the settlement agreements, in an effort to establish the proper economic comparability. As such, Headwater's argument amounts only to a disagreement with Dr. Ugone's inputs and analysis. Such disagreements are best addressed through vigorous cross-examination.

### B.  INTERDIGITAL NEGOTIATION AND THIRD PARTY OFFERS

Next, Headwater seeks to exclude Dr. Ugone's opinions in ¶¶ 189-191 of his report concerning why the Interdigital Letter of Intent was not consummated, and the significance of offers by Qualcomm and Fortress to purchase the Headwater portfolio that were not accepted by Headwater.  Headwater first argues that because these opinions do not form a part of his mathematical computation of damages, they are irrelevant and should be excluded. This argument fails because Dr. Ugone does rely upon these facts as part of his analysis.

Headwater also complains of Dr. Ugone's speculation that "InterDigital may have decided not to move forward with the acquisition at least because of potential validity concerns with Headwater's patent portfolio, including the Patents-in Suit." Headwater contends the basis for this speculation is the inclusion of a presentation in the materials exchanged with Interdigital but nothing from Interdigital itself. Headwater argues that Dr. Ugone only acts as a conduit for what might have been the opinions of a third party without the ability to cross-examine that third party.

Dr. Ugone's opinion as to why InterDigital may have decided not to proceed with the acquisition is raw speculation and is very prejudicial to Headwater.  The Court hereby grants the motion to strike that opinion from the report.  Because the Letter of Intent was executed by

Headwater, it has relevance as an indication of Headwater's willingness to accept that purchase price at that point in time. Accordingly, Dr. Ugone may discuss the Letter of Intent in that light. However, the fact that Qualcomm and Fortress made offers of specific amounts does not support Dr. Ugone's opinion that those offers "form a conservative upper bound on the royalty payment that Headwater and Samsung would have agreed in the hypothetical negotiation." (Dkt. No. 255-1 at 135). All that those offers could possibly show is that Qualcomm and Fortress thought that the portfolio was worth *at least* what they offered, rather than any "real world indicator of the value." *Id*. Accordingly, the Court hereby **STRIKES** from Dr. Ugone's report (1) the speculation as to why the InterDigital Letter of Intent was not consummated, and (2) all reference to the amount of the offers from Qualcomm and Fortress (unless Headwater itself first opens the door by referring to those amounts).

### C. NON-INFRINGING ALTERNATIVES

Next, Headwater complains of Dr. Ugone's discussion of non-infringing alternatives. Headwater contends Dr. Ugone's opinions should be excluded because he does not make any adjustments based on the alleged non-infringing alternatives and provides no financial analysis based on the costs of implementing non-infringing alternatives. Headwater contends this situation is similar to that in *Correct Transmission, LLC v. Nokia of Am. Corp.,* No. 2:22-cv-0343-JRG-RSP, 2024 WL 1327906 (E.D. Tex. Mar. 26, 2024). Second, Headwater contends Samsung has not shown the cited alternatives were available, acceptable substitutes. Headwater largely points to its complaint that Samsung's technical expert failed to demonstrate availability but also contends Dr. Ugone's acceptability analysis based on eventual introduction is insufficient. Last, Headwater contests Dr. Ugone's "other alternatives" such as "reducing screen brightness, changing screen theme and wallpaper to dark" or "Fast Charging and Wireless Charging" that Dr. Ugone contends would have reduced Samsung's willingness to pay for a power-saving feature.

5

Headwater contends these "other alternatives" are irrelevant because Dr. Ugone does not contend Samsung would remove the infringing feature, but only that Samsung would be less willing to pay Headwater.

Samsung responds that Dr. Ugone appropriately opines on the impact of non-infringing alternatives. While Dr. Ugone does not provide mathematical precision, he opines that the existence of non-infringing alternatives would have a downward impact on Samsung's willingness to pay for a license to the asserted patents. Samsung also contends the non-infringing alternatives were acceptable and available as confirmed by Headwater's own expert. Samsung contends both Dr. Wesel and Mr. de la Iglesia confirm Sleep/Deep Sleep and App Freezer were acceptable and available. Samsung also points to Dr. Ugone's opinions that the introduction of the alternatives demonstrates availability and acceptability. As to "other alternatives" Samsung contends they are relevant to the hypothetical negotiation as indicative of Samsung's willingness to pay for power-saving and battery life increasing technology.

Samsung is correct that *Correct Transmission* is distinguishable. In that case, the damages expert performed no analysis of the effect of non-infringing alternatives but merely repeated the testimony of technical experts as to the existence of such alternatives. Here, Dr. Ugone has done more than observe non-infringing alternatives exist. He provides expert analysis for how such alternatives factor into the damages analysis. While Dr. Ugone does not provide mathematical precision, that is not necessary, especially given that Headwater's own damages expert opines Headwater should be given the larger share of profits in the hypothetical negotiation based on a lack of non-infringing alternatives. The alternatives are also relevant to respond to Headwater's damages based on battery savings. An explanation that there are alternative means to achieve the same increase in battery life is relevant even if not expressed with mathematical precision.

6

### III. CONCLUSION

For the reasons provided above, the Motion is **GRANTED** as to (1) the speculation as to why the InterDigital Letter of Intent was not consummated, and (2) reference to the amount of the offers from Qualcomm and Fortress, and otherwise denied.

**SIGNED this 8th day of November, 2024.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE