IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| HEADWATER RESEARCH LLC, § § *Plaintiff*, § § v. § § AT&T INC., AT&T SERVICES, INC., § AT&T MOBILITY, LLC, and AT&T § CORP., § § *Defendants*. § | CIVIL ACTION NO. 2:23-CV-397-JRG-RSP (LEAD CASE) |

## MEMORANDUM ORDER

Before the Court is the Motion to Exclude or Strike Testimony of Robert LaGrone, filed by Plaintiff Headwater Research LLC. **Dkt. No. 135**. For the reasons discussed below, the Motion is **GRANTED** as to certain exhibits that Mr. LaGrone relies on, and otherwise **DENIED**.

### I. APPLICABLE LAW

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have

considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

2

## II. ANALYSIS

Plaintiff raises a number of issues with the expected testimony of Defendants' capacity-planning expert, Mr. LaGrone, with respect to (1) the timeliness of his disclosure as a fact witness; (2) the reliability of his expert disclosure; and (3) whether he has the requisite qualifications to provide his proffered expert testimony. As will be seen, Mr. LaGrone was not timely disclosed as a fact witness (a person with knowledge of relevant facts), but was timely disclosed as a non-retained expert. To the extent that LaGrone's fact testimony is based on his personal experience (as opposed to documents not disclosed during discovery), the balance tilts in favor of allowing such experience-based fact testimony as part of his expert testimony (within the scope of his expert disclosure).

### A. Timeliness of Mr. LaGrone's Disclosure as a Fact Witness

In the Motion, Plaintiff argues that Mr. LaGrone was first disclosed as a fact witness on March 3, 2025, which was weeks after the deadline to do so in the Docket Control Order. Dkt. No. 135 at 1 (citing Dkt. No. 104; Dkt. No. 135-2; Dkt. No. 135-3).

In response, Defendants argue that Plaintiff "sandbag[ged] AT&T throughout discovery" with respect to its damages theory, revealing for the first time that it was relying on a spectrum-savings model in its opening expert reports, despite Defendants' interrogatories which AT&T asserts required Plaintiff to disclose this to them much earlier. Dkt. No. 155 at 1. Defendants contend that, reacting to this revelation, they "immediately collected and produced [relevant] evidence" which included identifying "Robert LaGrone, who serves as the company's Senior Vice President of Corporate Development and oversees AT&T's strategic network planning and spectrum acquisitions. By virtue of this role and experience, Mr. LaGrone is uniquely qualified to

3

address the spectrum issues that Headwater injected into this case . . . as a percipient fact witness leading AT&T's spectrum transactions . . . ." *Id.*

In reply, Plaintiff argues that it *did* disclose its spectrum-savings model well in advance of the discovery cutoff. Dkt. No. 180 at 1 (citing Dkt. No. 180-2 at 47-50, 52-55).

In their sur-reply, Defendants argue that this is "false and misleading," and that, in reality, Plaintiff stated that "'Plaintiff has not made a final determination of which methodology or methodologies…should be used in determining a reasonable royalty in this case,' instead generically listing broad categories of theories, including 'the analytic method, the income method, cost savings, the market method, etc. or some combination thereof.'" Dkt. No. 204 at 1 (quoting Dkt. No. 180-2 at 49). Defendants contend that "Headwater cannot credibly claim that it disclosed its damages theory by pointing to a discovery response stating that it has not yet settled on a damages theory." *Id.* Defendants further point out that the terms "spectrum capacity" and "spectrum savings" never appeared in this (or any other) discovery response until Headwater's supplement on February 1, 2025—which incorporated Plaintiff's technical and damages expert reports—but which was after discovery had closed. *Id.*

The Court finds that Defendants were sufficiently on notice of Plaintiff's spectrum-savings theory in advance of the fact discovery cutoff. Plaintiff's supplemental responses to Defendants' interrogatories state that, amongst other options, it contemplates the use of a "cost savings" model and that it seeks to quantify the alleged damages through, amongst other options, "data savings, resulting in greater available bandwidth." Dkt. No. 180-2 at 49-50, 54. While Plaintiff has presented a broad category of options, it is not unbounded, and as this Court has repeatedly said, notice is a low bar to clear. Further, and contrary to Defendants' assertion that Plaintiff's February 1 interrogatory supplement incorporating its experts' reports occurred after the close of fact

4

discovery, this is not so; the operative Docket Control Order's discovery cutoff was February 7, 2025.[1] Dkt. No. 104 at 4. It is beyond dispute that these expert reports apprised Defendants of Plaintiff's theories. Consequently, Defendants' disclosure of Mr. LaGrone as a fact witness on March 3, 2025 was untimely.

"When confronted with a violation of Rule 26, Rule 37 grants district courts the authority to exclude untimely information." *Uniloc USA, Inc. v. Samsung Elecs. Am., Inc.*, No. 2:17-CV-00651-JRG, 2019 WL 2267212, at *3 (E.D. Tex. May 28, 2019) (citing Fed. R. Civ. P. 37(c)(1)). Four factors guide the Court's exercise of discretion in evaluating whether to exclude evidence under Rule 37. *CQ, Inc. v. TXU Min. Co., L.P.*, 565 F.3d 268, 280 (5th Cir. 2009). Those factors are: "(1) [The untimely party's] explanation for its failure to disclose . . . , (2) the importance of the evidence, (3) the potential prejudice to [the objecting party] in allowing the evidence, and (4) the availability of a continuance." *Id.*

As to the first factor: as discussed above, Defendants failed to disclose Mr. LaGrone and have no valid explanation vis-à-vis their affirmative obligations under Rule 26.

As to the second factor: the evidence at issue is important to Defendants' damages case. Plaintiff even acknowledges as much, remarking that Ms. Bennis—Defendants' damages expert—relies extensively on Mr. LaGrone. Dkt. No. 135 at 7.

As to the third factor: because discovery is now closed and the case is on the eve of trial,[2] Plaintiff has been deprived[3] of its opportunity to explore Mr. LaGrone's fact testimony with previously deposed witnesses, and through other means. This prejudice, however, is reduced by

---

[1] It is true, however, that the preceding Docket Control Order had January 10, 2025 as the fact discovery cutoff. Dkt. No. 41 at 3. This is of no moment as the Parties jointly moved to amend this date to February 7—a Motion that the Court granted. *See* Dkt. No. 93; *compare* Dkt. No. 104.
[2] Jury selection is set for August 15, 2025.
[3] *See also infra* regarding the inappropriateness of a continuance as a cure to this.

5

the fact that Plaintiff was able to depose Mr. LaGrone himself, and was able to question him on his factual assertions. *See generally* Dkt. No. 155-7.

As to the fourth factor: neither party seeks a continuance (*See generally* Dkt. No. 135; *see also* Dkt. No. 155), nor does the Court find a continuance would be appropriate since this case, as stated above, is on the eve of trial.

On balance, the Court finds that the prejudice to Plaintiff has been effectively mitigated, and that the importance of the evidence to Defendant and the minimal nature of the delay is disclosure of Mr. LaGrone's role, weigh strongly against striking his testimony. Accordingly, Plaintiff's Motion to Strike on this basis is **DENIED**.

### B. Reliability of Mr. LaGrone's Expert Opinions

In the Motion, Plaintiff argues that Mr. LaGrone's Rule 26(a)(2) non-retained expert testimony should be excluded "because the documents AT&T's Rule 26 disclosure for Mr. LaGrone cites as support for and to form the foundation of his opinions were never disclosed in fact discovery, [and] Headwater's first opportunity to make any inquiry into this evidence was by taking Mr. LaGrone's deposition on March 25, 2025." Dkt. No. 135 at 7. Consequently, continues Plaintiff, "AT&T's failure to disclose these documents in fact discovery is prejudicial enough alone for exclusion of both the documents and Mr. LaGrone's testimony about them under [Rule] 37." *Id.*

Defendants respond to this by arguing that "Headwater . . . took its opportunity at [Mr. LaGrone's] deposition to question Mr. LaGrone about the documents and data that inform his opinions," and that, "depositions under Rule 30 are precisely the mechanisms by which litigants can 'test' factual assertions made by fact and expert witnesses." Dkt. No. 204 at 2.

The Court agrees that the exhibits that Mr. LaGrone relies on should be excluded under Rule 37. The analysis for this is effectively the same as the one in Section II.A above. Critically, however, there is no longer any reduction in the prejudice that Plaintiff suffers under the third factor. As Plaintiff correctly points out, with fact discovery closed, it has had no opportunity to test the veracity of the exhibits that Mr. LaGrone relies on; being able to ask Mr. LaGrone about these items during his deposition is not sufficient since Plaintiff effectively had to take Mr. LaGrone's word for it regarding the reliability of the documents. This tips the scales in favor of striking.

Accordingly, Plaintiff's Motion to Strike on this basis is **GRANTED** and the four exhibits that Mr. LaGrone relies on are hereby **STRICKEN** as untimely. Likewise, Mr. LaGrone is precluded from testifying about these exhibits or from offering opinions which rely on them. This does not, however, preclude Mr. LaGrone from offering expert opinions. Contrary to Plaintiff's assertion that all of Mr. LaGrone's expert opinions should be excluded because of the above discussed issue,[4] the knowledge and experience he gained through his roles and responsibilities at AT&T permit Mr. LaGrone to offer expert opinions (which do not implicate the stricken exhibits) since such knowledge and experience underlying those opinions give them a sufficiently reliable basis as discussed below.

### C. Whether Mr. LaGrone Qualifies as an Expert

In the Motion, Plaintiff argues that Mr. LaGrone lacks the qualifications necessary to be an expert. Dkt. No. 135 at 10. Specifically, Plaintiff asserts that "Mr. LaGrone candidly admitted he had no understanding of the construct of the hypothetical negotiation used in patent damages analysis, despite one of four listed topics in his disclosure being AT&T's posture at the hypothetical negotiation." *Id.* at 10-11 (citing Dkt. No. 135-5 at 92:10–93:8). Plaintiff further argues that "Mr.

---

[4] Plaintiff's arguments for why all of Mr. LaGrone's expert opinions should be excluded are exclusively focused on the issues related to the four (now stricken) exhibits. *See* Dkt. No. 135 at 7-10.

7

LaGrone also explicitly admitted that he cannot understand the code implementing the network, is not a technical network engineer, nor does he engage in peer organizations in the telecommunications industry or in hands-on network deployment, or act as 'an academic.'" *Id.* at 11 (citing Dkt. No. 135-5 at 96:11–99:14). In short, Plaintiff asserts that Mr. LaGrone lacks any relevant technical expertise, licensing experience, or patent valuation knowledge, despite intending to offer testimony related to "network capacity, spectrum valuation, and implicitly, the value of the patents at issue." *Id.* at 12.

Defendants respond, arguing that Plaintiff is misrepresenting the situation and that Mr. LaGrone's expertise is in how AT&T does network planning, how it addresses capacity needs, and its spectrum acquisition. *See* Dkt. No. 155 at 7 (citing Dkt. No. 155-7 at 94:10-15). They assert that "[h]is opinions, as set forth in his report, relate to how AT&T would have considered Plaintiff's assertion at a hypothetical negotiation that the asserted patents confer a network traffic savings of about 3%. In rebutting Plaintiff's position, Mr. LaGrone relies not on patent licensing or engineering knowledge but on his years of experience in AT&T's network capacity planning and spectrum acquisitions." *Id.* at 7-8 (citing Dkt. No. 155-7 at 26:11-27:1). As to Mr. LaGrone's alleged lack of formal training, Defendants counter by pointing to Mr. LaGrone's own deposition statement: "I would say 19-plus years of working in telecom as pretty good experience over a certificate." *Id.* at 8 (citing Dkt. No. 155-7 at 25:1-8).

The Court agrees with Defendants. While Mr. LaGrone is, indeed, not an expert in patent damages hypothetical negotiations, his years of experience in network capacity planning do give him insight into what, for example, AT&T's state of mind would be at such a negotiation. It is merely incidental that this happens to be one of the relevant considerations in a hypothetical negotiation. Plaintiff's other criticisms in this vein are similarly unpersuasive.

8

As to Mr. LaGrone's lack of formal training, the Court again agrees with Defendants. The Federal Circuit has made clear that Rule 702 does not require such formal training. *Carnegie Mellon Univ. v. Marvell Tech. Group, Ltd.*, 807 F.3d 1283, 1303 (Fed. Cir. 2015) (The expert did "not have a Ph.D. or a traditional academic appointment, but those credentials are not required by Rule 702's qualification standard. Indeed, even 'education' and 'training' impose no such requirement, and the Rule provides for 'knowledge,' 'skill,' and 'experience' as other bases for qualification.") Mr. LaGrone's 19 years of experience is sufficient to put his qualifications before the jury.

Accordingly, the Motion to Strike on this basis is **DENIED**. Mr. LaGrone is permitted to offer testimony within the scope of his Rule 26(a)(2)(C) disclosure, relating to network planning, capacity planning, and spectrum acquisitions, but shall not be permitted to rely upon documents not timely disclosed during discovery.

**SIGNED this 3rd day of August, 2025.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE